# UNITED STATES DISTRICT COURT FOR
## THE  EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| BOB ROSS, INC., a Virginia corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| RIP N DIP, INC., a California corporation, and | ) | |
| ZUMIEZ, INC., a Washington corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Bob Ross, Inc. ("BRI" or "Plaintiff"), by and through its undersigned counsel, and for its Complaint against Defendants Rip N Dip, Inc. ("Rip N Dip") and Zumiez, Inc. ("Zumiez") (collectively, "Defendants"), respectfully states as follows:

## INTRODUCTION

1.      Bob Ross, the late artist, painting instructor, and television personality, is an American cultural icon.  His landscapes and "Happy Trees" have inspired generations of budding artists to pursue their ambitions to "paint like Bob."  Beginning in 1984, the company he co-founded, aptly named "Bob Ross, Inc." ("BRI"), marketed and promoted Bob Ross to the American public.  In its earliest days, BRI developed what would become an immensely popular and long-running public television series, "The Joy of Painting" featuring Bob Ross, which brought Bob Ross's painting classes into the living rooms of millions of viewers across the country.  From there, the Bob Ross brand, fueled by BRI's efforts and licensing activities, expanded over the ensuing three decades into dozens of product categories, from instructional videos and companion books to art and painting supplies and a host of apparel, merchandise, and

other items.  BRI also created and implemented the highly successful "Certified Ross Instructor," or "CRI" program to teach aspiring artists Bob Ross's signature "wet-on-wet" painting technique.

2.      Even though Bob Ross passed away in 1995, BRI has "kept his flame alive" by continuing to bring Bob Ross's unique style and persona to a new generation of fans.  As the sole and exclusive owner of the Bob Ross intellectual property, including his right of publicity, trademarks, and copyrights, BRI vigilantly protects its valuable rights in this property through a robust licensing and enforcement program.

3.      Defendants are the purveyors of so-called "streetwear," consisting of apparel, footwear, and various accessories.  Without permission or authorization from BRI, Defendants have used, and are continuing to use, the unique and immediately recognizable Bob Ross image and likeness on numerous products, including t-shirts, jackets, hoodies, skateboards, umbrellas, blankets, and air fresheners (hereinafter, the "Infringing Products").  Defendants' actions constitute violations of the Bob Ross right of publicity, as well as infringement of BRI's registered trademarks.  BRI now brings this action to recover damages and other relief as redress for the harm it has suffered as a result of Defendants' conduct.

## I.      THE PARTIES

4.      Plaintiff BRI is a corporation organized and existing under the laws of the Commonwealth of Virginia, having its principal place of business at 13882 Park Center Road, Herndon, Virginia 20171.

5.      Upon information and belief, Defendant Rip N Dip is a California corporation having its principal place of business at 724 Kohler Street, Los Angeles, California 90021.

2

6. Upon information and belief, Defendant Zumiez is a Washington corporation having its principal place of business at 6300 Merrill Creek Parkway, Suite B, Everett, Washington 98203. Also, upon information and belief, Defendant Zumiez is the authorized reseller of Defendant Rip N Dip's products, including the Infringing Products.

## II.   JURISDICTION AND VENUE

7. This is an action for trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1501, *et seq.*, for trademark infringement and unfair competition under Va. Code §§ 59.1-92.12-59.1-92.13, and for misappropriation of rights of publicity under Va. Code §§ 8.01-40 and 18.2-216.1.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b); and 15 U.S.C. § 1121. This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over BRI's claims of trademark infringement and unfair competition under Va. Code §§ 59.1-92.12-59.1-92.13 and over BRI's claim for misappropriation of rights of publicity under Va. Code §§ 8.01-40 and 18.2-216.1.

9. This Court has personal jurisdiction over Defendant Zumiez because Zumiez has continuous and systematic business contacts with the Commonwealth of Virginia. Upon information and belief Zumiez operates retail locations in this District where the Infringing Products are offered for sale and sold.

10. This Court has personal jurisdiction over Defendant Rip N Dip because Rip N Dip has continuous and systematic business contacts with the Commonwealth of Virginia. Upon information and belief, Rip N Dip has principals, partners, officers, directors, employees, or other persons related to Rip N Dip doing business in the Commonwealth of Virginia. Further,

3

Defendant Rip N Dip has deliberately and intentionally shipped or caused to be shipped the Infringing Products to the Commonwealth of Virginia for the purpose of offering for sale and selling the Infringing Products through the stores of its authorized reseller, Defendant Zumiez.

11.     Venue is proper in this Court under 28 U.S.C. § 1391 in that Defendants are subject to personal jurisdiction in this judicial district, and that a substantial part of the events giving rise to this action occurred in this judicial district.

### III.   STATEMENT OF FACTS

### A.    The Fame and Popularity of Bob Ross

12.     Robert Norman Ross ("Bob Ross" or "Mr. Ross") gained popularity upon airing his instructional show, "The Joy of Painting," on public television beginning in 1983.

13.     "The Joy of Painting" is an Emmy Award-winning television show in which Mr. Ross painted landscapes in thirty-minute segments.

14.     Mr. Ross used several unique catchphrases on his show that gained popularity. For instance, Mr. Ross would refer to mistakes in his paintings as "happy accidents" and was known to describe "happy little trees" and "happy little clouds" in his artwork. Mr. Ross was also well known for using a wet-on-wet painting technique.

15.      Mr. Ross was known for wearing jeans and a button-down shirt while filming on a minimalist set.

16.     Mr. Ross is most readily recognized for his signature permed afro hair style.

17.     Mr. Ross filmed 381 episodes of "The Joy of Painting" between 1983 and 1994.

18.     Mr. Ross co-founded BRI in 1984 to manage the growing artistic empire that Mr. Ross created, including his television show, art supply line, how-to-books, and painting classes.

19.     By 1987, Mr. Ross was traveling across the country teaching painting classes.

20.     Today, BRI sells exclusive merchandise through its online website (www.BobRoss.com) (the "BRI website") including t-shirts and costumes.

21.     Another page on the BRI website lists products items for which BRI has given permission to bear Mr. Ross's name, image, and likeness (https://experience.bobross.com/category/swag/).

22.     BRI authorizes the sale of its art supplies at official dealers nationwide (https://experience.bobross.com/store-finder-2/).

23.     BRI established and administers the program for training individuals to become "Certified Ross Instructors," or "CRIs," who are authorized by BRI to teach painting classes in Mr. Ross's signature wet-on-wet style worldwide (https://experience.bobross.com/cri-classes/).

24.     In 2011, American Public Television (APT) created a documentary about Mr. Ross's life, entitled "Bob Ross: The Happy Painter." The documentary was posted to the Bob Ross YouTube channel in 2018 and has nearly 2 million views.

25.     In 2015, all 381 episodes of "The Joy of Painting" were added to the official Bob Ross YouTube channel (https://www.youtube.com/user/BobRossInc) (the "Bob Ross YouTube channel"). The Bob Ross YouTube channel has more than 4 million subscribers and 360 million

5

total views. The most-watched video on the Bob Ross YouTube channel has garnered over 30 million views.

26.     Additionally, beginning on October 29, 2015, the platform Twitch Creative celebrated its launch by streaming every episode of "The Joy of Painting" over a nine-day period (https://www.twitch.tv/bobross/). Twitch reported that this streaming marathon garnered 5.6 million viewers. Due to its popularity, Twitch repeated the marathon regularly, including on what would have been Mr. Ross's 74th birthday on October 29, 2016.

27.     According to Twitch, viewers of the first "The Joy of Painting" marathon sent 7.6 million chat messages using 3.8 million specially created "KappaRoss" emojis.

28.     In June of 2016, Netflix began streaming several episodes of "The Joy of Painting" episodes under the monikers "Beauty is Everywhere" and "Chill with Bob Ross."

29.     In 2020, the streaming platform Tubi added nearly 400 episodes of "The Joy of Painting" to its platform for free.

30.     Tubi reports that since the COVID-19 pandemic has required viewers to remain at home, views of "The Joy of Painting" have skyrocketed.

31.     BRI maintains a substantial presence on social media.  BRI's Facebook page, which features Bob Ross-related content and products, has nearly 1.6 million "likes."  BRI's Instagram account has over 150,000 followers.  BRI also actively maintains a Twitter account using the handle @BobRossOfficial (https://twitter.com/BobRossOfficial) and shares news, photos, quotes, facts, and paintings by Mr. Ross. The @BobRossOfficial account has over 26,000 followers.

32.     Mr. Ross's paintings have been publicly displayed on several occasions, including from September 10-15, 2019 at the Franklin Park Arts Center in Purcellville, Virginia.

33.     In addition, Mr. Ross's paintings have been or will be displayed at the following public venues:  (1) the DePaul Art Museum in Chicago (April 25-August 11, 2019) (4 paintings part of a larger exhibit); (2) the ArkDes Museum in Stockholm, Sweden (May 15-November 1, 2020) (3 paintings part of a larger exhibit); (3) the Pentiction Art Gallery in British Columbia, Canada (July 4-September 13, 2020) (Bob Ross-only exhibit); and (4) Museum MORE in Gorssel, The Netherlands (November 7, 2020-April 11, 2021) (Bob Ross-only exhibit).

34.     In 2019, the Smithsonian National Museum of American History in Washington, D.C. acquired several of Mr. Ross's paintings for its permanent collections, as well as a stepladder used by Mr. Ross on "The Joy of Painting" and two notebooks kept during the second and third seasons of the show.

35.     Mr. Ross passed away in 1995 but is more popular than ever. Mr. Ross has been hailed a "cultural icon" by prominent news outlets.

36.     Due to Mr. Ross's enormous success and popularity, BRI frequently receives requests to license Mr. Ross's image and likeness or any of the thirteen federally registered trademarks owned by BRI. However, BRI takes care to limit such merchandising activities to only products of the highest quality and that conform with the wholesome and whimsical nature of Mr. Ross's image and art.

### B.     The Bob Ross Intellectual Property

37.     BRI is the owner of all right, title, and interest in and to Bob Ross's right of publicity – *See RSR Art, LLC v. Bob Ross, Inc.*, 380 F. Supp. 3d 510 (E.D. Va. 2019) (O'Grady,

7

J.) – and thus controls the commercial use and exploitation of Bob Ross's name, image, likeness, voice, persona, reputation, and celebrity status.

38.     BRI is also the registrant and owner of thirteen active registered trademarks at the U.S. Patent and Trademark Office ("USPTO"), which consist, in whole or in part, of either the Bob Ross name, image, and likeness or the catchphrases made popular by Mr. Ross on "The Joy of Painting" television series.

39.     BRI is the registrant and owner of United States Trademark Registration No. 1,430,222, registered on February 24, 1987 for goods and services, namely, publications in International Class 16 (the "'222 Mark"). A true and correct copy of the U.S. Trademark Registration No. 1,430,222 (the "'222 Registration") is attached hereto as Exhibit "A."  An image of the mark covered by '222 Registration is reproduced below:



40.     BRI's registration of the '222 Mark is *prima facie* evidence of its validity and conclusive evidence of BRI's exclusive right to use the '222 Mark in commerce in connection with publications. The registration of the '222 Mark also constitutes constructive notice to Defendants of BRI's ownership and exclusive rights in the '222 Mark. Further, BRI's '222 Mark is valid, incontestable, subsisting, unrevoked, and uncancelled.

*ACTIVE 51842226v4*

41.     BRI began actual and constructive use of the '222 Mark in interstate commerce at least as early as July 10, 1986. Since that time, BRI has been continuously using, without abandonment, the '222 Mark in connection with its publications, television show, and other merchandise featuring Mr. Ross to individuals throughout the United States, including in the Commonwealth of Virginia.

42.     BRI also owns common law rights in the '222 Mark for services related to the broadcast and streaming of "The Joy of Painting" and other Bob Ross-related media, merchandise, and services in interstate commerce.

43.     BRI is the registrant and owner of United States Trademark Registration No. 2,028,460, registered on January 7, 1997 for goods and services, namely, video recordings featuring instruction on painting methods in International Class 9 and artistic materials, including plastic beater racks, instructional books, and paint brushes in International Class 16 (the "'460 Mark"). A true and correct copy of the U.S. Trademark Registration No. 2,028,460 (the "'460 Registration") is attached hereto as Exhibit "B."   An image of the mark covered by '460 Registration is reproduced below:



44.     BRI's registration of the '460 Mark is *prima facie* evidence of its validity and conclusive evidence of BRI's exclusive right to use the '460 Mark in commerce in connection with video recordings and artistic materials, including plastic beater racks, instructional books, and paint brushes. The registration of the '460 Mark also constitutes constructive notice to

9

Defendants of BRI's ownership and exclusive rights in the '460 Mark. Further, BRI's '460 Mark is valid, incontestable, subsisting, unrevoked, and uncancelled.

45.     BRI began actual and constructive use of the '460 Mark in interstate commerce at least as early as September 11, 1995 Since that time, BRI has been continuously using, without abandonment, the '460 Mark in connection with its video recordings and artistic materials, including plastic beater racks, instructional books, and paint brushes, television show, and other merchandise featuring Mr. Ross to individuals throughout the United States, including in the Commonwealth of Virginia.

46.     BRI also owns common law rights in the '460 Mark for services related to the broadcast and streaming of "The Joy of Painting" and other Bob Ross-related media, merchandise, and services in interstate commerce.

47.     To date, BRI has spent or caused to be spent nearly $15 million in advertising and promoting the '222 Mark and the '460 Mark (collectively, the "Marks") and the goods and services offered and sold under the Marks. The retailers, merchandisers, artists, and entertainers who seek a license to any BRI trademark do so because the Marks are nationally recognized and respected, and part of the value licensees pay for the Marks is their associated goodwill.  BRI continues to engage in such advertising and promotion and its licensees depend on the maintenance of the value of the Marks. As a result, the relevant consuming public has come to recognize and associate the Marks with BRI as an indicator of the quality of goods and services that are provided by BRI and its licensees.  Consequently, the Marks have acquired a highly favorable reputation among the members of the relevant consuming public and have become a valuable symbol of BRI's goodwill.

*ACTIVE 51842226v4*

48.     As discussed above, BRI's Marks, its other registered and common law trademarks, and Mr. Ross's image and likeness have appeared in national and international media celebrating the legacy of Mr. Ross and his show, "The Joy of Painting." Streaming and broadcast of "The Joy of Painting" have garnered hundreds of millions of views, even 25 years after Mr. Ross's death.  As a result, BRI's Marks, as well as Mr. Ross's image and likeness, have achieved substantial recognition and secondary meaning among the trade and the consuming public and have substantial commercial value.

### C.     Defendants' Infringing Acts

49.     On or about October 25, 2019, BRI became aware of a Rip N Dip tee shirt (the "Infringing Shirt") being sold on the Zumiez website, and presumably in Zumiez retail locations, prominently displaying the image and likeness of Bob Ross.  An image of the Infringing Shirt is below, and an image from the Zumiez website is attached hereto as Exhibit "C."



50.     Specifically, the Infringing Shirt depicts Mr. Ross, in his signature permed afro and button-down shirt, painting a mountain landscape stylized to include a cat's face on the face of the mountain. The use of Mr. Ross's likeness, in which he is facing his body to the left and smiling, is confusingly similar to the design of the '222 Registration. Additionally, the paint palette that Mr. Ross is holding on the Infringing Shirt bears a signature in the bottom-right corner that is confusingly similar to Mr. Ross's signature as depicted in the '460 Registration. From even a short distance away, a viewer of the Infringing Shirt would not be able to decipher the text of the signature and would reasonably believe the signature to be that of the depicted artist, Mr. Ross, in violation of the '460 Registration.

51.     On or about October 25, 2019, BRI became aware of a Rip N Dip air freshener (the "Infringing Air Freshener") being sold on the Zumiez website, and presumably in Zumiez retail locations, consisting of the image and likeness of Bob Ross.  An image of the Infringing Air Freshener is below, and an image from the Zumiez website is attached hereto as Exhibit "D."



52.     Specifically, the Infringing Air Freshener depicts Mr. Ross, in his signature permed afro and button-down shirt, painting a mountain landscape stylized to include a cat's face

12

on the face of the mountain. The use of Mr. Ross' likeness, in which he is facing his body to the left and smiling, is confusingly similar to the design of the '222 Registration. Additionally, the paint palette that Mr. Ross is holding on the Infringing Air Freshener bears a signature in the bottom-right corner that is confusingly similar to Mr. Ross's signature as depicted in the '460 Registration. From even a short distance away, a viewer of the Infringing Air Freshener would not be able to decipher the text of the signature and would reasonably believe the signature to be that of the depicted artist, Mr. Ross, in violation of the '460 Registration.

53.     On or about January 24, 2019, BRI became aware of a Rip N Dip jacket (the "Infringing Jacket") being sold on the Rip N Dip website prominently displaying the image and likeness of Bob Ross.  Images of the Infringing Jacket are below, and images from the Rip N Dip website are attached hereto as Exhibits "E" and "F."



54.     Specifically, the Infringing Jacket depicts Mr. Ross, in his signature permed afro and button-down shirt, painting a mountain landscape stylized to include a cat's face on the face of the mountain. The use of Mr. Ross's likeness, in which he is facing his body to the left and smiling, is confusingly similar to the design of the '222 Registration. Additionally, the paint palette that Mr. Ross is holding on the Infringing Jacket bears a signature in the bottom-right

13

corner that is confusingly similar to Mr. Ross's signature as depicted in the '460 Registration. From even a short distance away, a viewer of the Infringing Jacket would not be able to decipher the text of the signature and would reasonably believe the signature to be that of the depicted artist, Mr. Ross, in violation of the '460 Registration.

55.     On or about January 24, 2019, BRI became aware of a Rip N Dip long-sleeve tee (the "Infringing LS Tee") being sold on the Rip N Dip website prominently displaying the image and likeness of Bob Ross.   Moreover, the description of the mineral-wash option for the Infringing LS Tee on the Rip N Dip website reads, "Our boy bob is back." Further, the URL for the Infringing LS TEE uses the word "Ross" in the address. Images of the Infringing LS Tee are below, and images from the Rip N Dip website is attached hereto as Exhibits "G" and "H."



56.     Specifically, the Infringing LS Tee depicts Mr. Ross, in his signature permed afro and button-down shirt, painting a mountain landscape stylized to include a cat's face on the face of the mountain. The use of Mr. Ross's likeness, in which he is facing his body to the left and smiling, is confusingly similar to the design of the '222 Registration. Additionally, the paint

palette that Mr. Ross is holding on the Infringing LS Tee bears a signature in the bottom-right corner that is confusingly similar to Mr. Ross's signature as depicted in the '460 Registration. From even a short distance away, a viewer of the Infringing LS Tee would not be able to decipher the text of the signature and would reasonably believe the signature to be that of the depicted artist, Mr. Ross, in violation of the '460 Registration.

57.     On or about January 24, 2019, BRI became aware of a Rip N Dip short-sleeve tee (the "Infringing SS Tee") being sold on the Rip N Dip website that prominently displays the image and likeness of Bob Ross.  Moreover, the description of the white option for the Infringing SS Tee on the Rip N Dip website reads, "Happy trees are what rule the world." The description for the blue mineral wash option for the Infringing SS Tee reads, "Bob ross." The description for the grey mineral wash option for the Infringing SS Tee reads, "Happy tees." The description for the yellow option for the infringing SS Tee reads, "We know you love this tee It's the best seller every season." Further, the URL for the Infringing SS Tee uses the word "Ross" in the address. Images of the Infringing SS Tee are below, and images from the Rip N Dip website are attached hereto as Exhibits "I," "J," "K," "L," and "M."



58.    Specifically, the Infringing SS Tee depicts Mr. Ross, in his signature permed afro and button-down shirt, painting a mountain landscape stylized to include a cat's face on the face of the mountain. The use of Mr. Ross's likeness, in which he is facing his body to the left and smiling, is confusingly similar to the design of the '222 Registration. Additionally, the paint palette that Mr. Ross is holding on the Infringing SS Tee bears a signature in the bottom-right corner that is confusingly similar to Mr. Ross's signature as depicted in the '460 Registration. From even a short distance away, a viewer of the Infringing SS Tee would not be able to decipher the text of the signature and would reasonably believe the signature to be that of the depicted artist, Mr. Ross, in violation of the '460 Registration.

59.    On or about July 22, 2020, BRI became aware that Defendant Rip N Dip had been selling a skateboard deck on the Rip N Dip website that prominently displays the image and likeness of Bob Ross (the "Infringing Skateboard").   The web page on which the Infringing Skateboard appears currently indicates that the product is "sold out."   An image of the Infringing Skateboard is reproduced below, and an image from the Rip N Dip website is attached hereto as Exhibit "N":



16

60.     Specifically, the Infringing Skateboard depicts Mr. Ross, in his signature permed afro and button-down shirt, painting a mountain landscape stylized to include a cat's face on the face of the mountain. The use of Mr. Ross's likeness, in which he is facing his body to the left and smiling, is confusingly similar to the design of the '222 Registration. Additionally, the paint palette that Mr. Ross is holding on the Infringing Skateboard bears a signature in the bottom-right corner that is confusingly similar to Mr. Ross's signature as depicted in the '460 Registration. From even a short distance away, a viewer of the Infringing Skateboard would not be able to decipher the text of the signature and would reasonably believe the signature to be that of the depicted artist, Mr. Ross, in violation of the '460 Registration.

61.     On or about July 22, 2020, BRI became aware that Defendant Zumiez had been selling on its website a "grip tape" (an accessory used by skateboarders) that prominently displays the image and likeness of Bob Ross (the "Infringing Grip Tape").   The web page on which the Infringing Grip Tape appears currently states that the product is "out of stock."   An image of the Infringing Grip Tape is reproduced below, and an image from the Zumiez website is attached hereto as Exhibit "O":



ACTIVE 51842226v4

62.     Specifically, the Infringing Grip Tape depicts Mr. Ross, in his signature permed afro and button-down shirt, painting a mountain landscape stylized to include a cat's face on the face of the mountain. The use of Mr. Ross's likeness, in which he is facing his body to the left and smiling, is confusingly similar to the design of the '222 Registration. Additionally, the paint palette that Mr. Ross is holding on the Infringing Grip Tape bears a signature in the bottom-right corner that is confusingly similar to Mr. Ross's signature as depicted in the '460 Registration. From even a short distance away, a viewer of the Infringing Grip Tape would not be able to decipher the text of the signature and would reasonably believe the signature to be that of the depicted artist, Mr. Ross, in violation of the '460 Registration.

63.     In addition, Defendant Rip N Dip offers for sale on its website a blanket, hoodie, and umbrella (the "Infringing Hoodie," the "Infringing Blanket," and the "Infringing Umbrella," respectively), each of which prominently displays the image and likeness of Bob Ross. Further, the description for the Infringing Hoodie reads, "I need the happy trees Happy trees save me Go green With happy trees."  Images of the Infringing Blanket, Infringing Hoodie, and Infringing Umbrella are reproduced below, and images from the Rip N Dip website are attached hereto as Exhibits "P," "Q," and "R."



64.     The Infringing Shirt, the Infringing Air Freshener, the Infringing Jacket, the Infringing LS Tee, the Infringing SS Tee, the Infringing Skateboard, the Infringing Grip Tape, the Infringing Blanket, the Infringing Hoodie, and the Infringing Umbrella are hereinafter referred to collectively as the "Infringing Products."

65.     Defendants are not, and have never been, affiliated with, sponsored, or licensed by BRI.  The use by Defendants on the Infringing Products of (a) the Marks, (b) designs confusingly similar to the Marks, and (c) Mr. Ross's name, image, and likeness was never authorized, approved, or licensed by BRI.

66.     Defendants have never contacted BRI for permission to use or license BRI's trademarks, including the Marks, any designs confusingly similar to the Marks, or Mr. Ross's name, image and likeness for use on or in connection with any goods or in any services, including on any of the Infringing Products.

67.     BRI has written to Defendants on several occasions to demand that any infringing garments or accessories be removed from Defendants' websites. In one instance, on February 5, 2019, BRI asked Defendant Rip N Dip to remove Mr. Ross's name from the searchable title of Defendant Rip N Dip's items offered for sale on its website. This communication is attached hereto as Exhibit "S."

68.     Another communication to Defendant Zumiez, regarding infringement by both Defendants, was dated July 10, 2020 and July 15, 2020 and is attached hereto as Exhibit "T."

69.     Defendants are aware of BRI's notifications of infringement, as both Defendants have responded to BRI's communications.  Nonetheless, Defendants have failed and refused to cease their unlawful actions.

*ACTIVE 51842226v4*

**D.     The Harm to BRI as a Result of Defendants' Unlawful Actions**

70.     Since 1983, BRI has offered goods and services in interstate commerce under the Bob Ross name, image, and likeness. The '222 Mark has been in use since 1987 and the '460 Mark has been in use since 1995. Television viewers from 1983 through 1994 have long associated the Marks with the goodwill generated by Mr. Ross, his show, his image and likeness, and his products. In recent years, "The Joy of Painting" and Mr. Ross have become immensely popular and ubiquitous even among a population that was born after Mr. Ross's death. Mr. Ross, his image and likeness, the Marks, and BRI have come to be associated with high-quality products and wholesome content among all generations of people.

71.     Defendants operate retail stores for casual apparel and accessories geared toward millennials and Generation-Z consumers who are interested in popular culture. Both Defendants and BRI offer goods and services, namely products and services bearing the Bob Ross name, image and likeness or the BRI Marks, that are targeted, offered, and sold to the same classes of prospective customers, namely, members of the general public who are fans of Mr. Ross, "The Joy of Painting," and popular culture more generally.

72.     Upon information and belief, Defendants have intentionally and willfully directed their advertising, promotional and sales efforts at the same classes of consumers as those to whom BRI caters in an effort to capitalize upon and benefit from BRI's substantial goodwill and reputation and to unlawfully trade upon the substantial commercial value of Bob Ross's name, image, and likeness as well as the BRI Marks.

73.     Further, upon information and belief, Defendants have engaged in such conduct with the knowledge that BRI's goodwill, the Marks, and Mr. Ross' name, image and likeness have gained fame in popular culture for their wholesome and relaxing content.

74.     Most critically, Defendants have copied BRI's Marks, and used Mr. Ross's image and likeness, to provide apparel and accessories in virtually the same manner and in the same geographic markets as are sold on the BRI website.  Below are images of a shirt offered for sale by BRI (the "BRI Shirt") (left) and the Infringing Shirt (right) offered by Defendants and referenced above. An image from the BRI website is attached hereto as Exhibit "U."

  

**BRI Shirt**                    **Infringing Shirt**

75.     BRI's Marks, the Bob Ross image and likeness, and the images depicted on the Infringing Products are substantially and confusingly similar. Thus, Defendants' use of the images depicted on the Infringing Products is likely to be confusing to a substantial number of actual and potential customers, and is likely to cause them to be deceived and to erroneously assume that Defendants' goods are in some way connected with, sponsored or licensed by, or otherwise affiliated with BRI, all to BRI's detriment.

*ACTIVE 51842226v4*

76.     Not surprisingly, Defendants' unauthorized use of Bob Ross's image and likeness on the Infringing Products has resulted in actual confusion among the trade and consuming public.  BRI's licensees have contacted BRI in the belief that the Infringing Products are licensed or otherwise approved by BRI.

77.     Given the fame and popularity of Mr. Ross and the ubiquity of the Marks and his image and likeness, the confusion between BRI and Defendants' Infringing Products, along with Defendants' cavalier attitude toward intellectual property infringement, puts BRI at risk and damages its reputation, goodwill, and ability to market and promote its goods and services.

78.     Defendants' unauthorized use of the images on the Infringing Products has injured BRI's interests and will continue to do so unless immediately enjoined.  Specifically, Defendants (a) have traded upon and threaten to further trade upon the significant and valuable goodwill in BRI's Marks and Mr. Ross's image and likeness; (b) are likely to cause further public confusion as to the source, sponsorship, or affiliation of Defendants' goods; (c) have damaged and threaten to damage BRI's significant and valuable goodwill in its Marks and the Bob Ross image and likeness; and (d) have injured and threaten to injure BRI's right to use and license its Marks and the Bob Ross image and likeness as the exclusive indicia of origin of BRI's goods and services.

79.     Further, Defendants' unauthorized use of Bob Ross's image and likeness on the Infringing Products has damaged and, if unrestrained, will likely continue to damage BRI's business relationships with its licensees.  In particular, BRI's licensees have expressed to BRI their displeasure that Defendants are commercially exploiting the Bob Ross image and likeness

22

without having to pay royalties to BRI, thereby enabling Defendants to offer for sale and sell the Infringing Products at price points that are more desirable to consumers.

80.     By letter to Defendant Rip N Dip dated January 29, 2019, BRI notified Defendant Rip N Dip of BRI's ownership of the Marks, its common law rights in and to the BRI Marks, and Mr. Ross' name, image, and likeness, and demanded that Defendant Rip N Dip immediately cease and desist from any and all use of the Marks and Mr. Ross's name, image, and likeness. A true and correct copy of the January 29, 2019 letter is attached hereto as Exhibit "V," and e-mail correspondence dated February 5, 2019 regarding the January 29, 2019 letter is attached as Exhibit "S," wherein BRI demanded that Defendant Rip N Dip immediately cease and desist from any and all use of the Marks and Mr. Ross's name, image, and likeness, including in the searchable listing content on Defendant Rip N Dip's website.

81.     By letter to Defendant Zumiez dated July 10, 2020, BRI notified Defendant Zumiez of BRI's ownership of the Marks and its common law rights in and to the BRI Marks and Mr. Ross' name, image, and likeness, and demanded that Defendant Zumiez immediately cease and desist from any and all use of the Marks and Mr. Ross's name, image, and likeness on the Infringing Products. A true and correct copy of the July 10, 2020 letter is attached hereto as Exhibit "W," and email correspondence regarding this letter, dated July 15, 2020, is attached hereto as Exhibit "T."

82.     Notwithstanding BRI's demands, and with full knowledge of BRI's ownership of the Marks and the name, image, and likeness of Bob Ross, Defendants have been and are continuing to market, promote, advertise, distribute, offer for sale, and sell the Infringing Products containing the design confusingly similar to the BRI Marks and clearly depicting the unmistakable and immediately recognizable image and likeness of Bob Ross.

23

## COUNT I

**Misappropriation of the Bob Ross Right of Publicity**
**(Va. Code §§ 8.01-40 and 18.2-216.1)**

83.     BRI hereby realleges and incorporates by reference the allegations of paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84.     BRI is the owner of all right, title, and interest in and to Bob Ross's right of publicity.  *See RSR Art, LLC v. Bob Ross, Inc.*, 380 F. Supp. 3d 510 (E.D. Va. 2019) (O'Grady, J.).  BRI thus has sole control over the commercial use and exploitation of Bob Ross's name, likeness, image, voice, persona, reputation, and celebrity status.

85.     Bob Ross's name, likeness, image, voice, persona, reputation, and celebrity status have substantial commercial value and are marketable in the areas of art, popular culture, and other valuable licensing.

86.      Defendants have used and are continuing to use Bob Ross's image and likeness for commercial purposes and for the purposes of trade, including but not limited to selling and offering for sale the Infringing Products without BRI's permission, approval, license, or consent.

87.     On information and belief, Defendants' use of Bob Ross's image and likeness on the Infringing Products is knowing, intentional, willful, wanton, and malicious.

88.     On information and belief, Defendants' use of Bob Ross's image and likeness on the Infringing Products is designed to enhance the probability of sales of the Infringing Products for Defendants' financial benefit.

*ACTIVE 51842226v4*

89.     BRI has granted no permission, authorization, approval or license to Defendants to use Bob Ross's image and likeness on the Infringing Products.

90.     Defendants' wrongful acts alleged herein have permitted and/or will permit Defendants to earn substantial revenues and profits on the strength of Bob Ross's image and likeness.

91.     Defendants' unauthorized use for commercial purposes of Bob Ross's image and likeness constitutes a willful misappropriation and violation of Bob Ross's right of publicity in and to such image and likeness, in violation of Va. Code §§ 8.01-40 and 18.2-216.1.

92.     By reason of Defendants' wrongful acts alleged herein, BRI has suffered and is continuing to suffer damage to its rights as the sole and exclusive owner of Bob Ross's right of publicity as a result of the erroneous perception that the Infringing Products or Defendants are associated with, affiliated with, sponsored by, licensed or endorsed by BRI.

## COUNT II

**Federal Trademark Infringement**
**(Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))**

93.     BRI hereby realleges and incorporates by reference the allegations of paragraphs 1 through 92 of this Complaint as if fully set forth herein.

94.     The '222 Registration is valid and subsisting, and is *prima facie* evidence of the validity of the '222 Mark, of BRI's ownership of the '222 Mark, and of BRI's exclusive right to use the '222 Mark for goods and services relating to Mr. Ross.  By virtue of this registration, the '222 Mark is entitled to protection under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*.

25

95.     The '460 Registration is valid and subsisting, and is *prima facie* evidence of the validity of the '460 Mark, of BRI's ownership of the '460 Mark, and of BRI's exclusive right to use the '460 Mark for goods and services relating to Mr. Ross.  By virtue of this registration, the '460 Mark is entitled to protection under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*.

96.     The Infringing Products' depiction of a design confusingly similar to the Marks for competing apparel and accessories is likely to cause confusion, mistake, or deception as to the source or origin of Defendants' goods in that the trade and the consuming public are likely to believe that Defendants' goods are provided, sponsored, approved, or licensed by BRI, or that Defendant is affiliated, associated or otherwise legitimately connected with BRI.

97.     Defendants' adoption and use of the design that is confusingly similar to the BRI Marks was intentional and was for the purpose of misleading the trade and the consuming public.  These willful actions are in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

98.     As a result of Defendants' infringement, as described above, the trade and the consuming public are likely to be confused and deceived as to the source, sponsorship, affiliation or approval of BRI's goods and services marketed under its protected Marks.

99.     BRI has been damaged by the aforementioned acts in an amount to be determined at trial.  Defendants' adoption and use of the depictions on the Infringing Products is confusingly similar to BRI's Marks and was undertaken by Defendants intentionally, maliciously, and in bad faith.  Therefore, BRI is entitled to recover from Defendants treble damages and attorneys' fees.

*ACTIVE 51842226v4*

100.    In addition, Defendants' conduct, if it continues, will result in irreparable harm to BRI and, specifically, to the goodwill associated with the BRI Marks, unless such conduct is enjoined.

**COUNT III**

**False Designation of Origin**
**(Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))**

101.    BRI hereby realleges and incorporates by reference the allegations of paragraphs 1 through 100 of this Complaint as if fully set forth herein.

102.    Defendants' conduct as described herein constitutes use of a false designation of origin and/or a false or misleading description or representation of fact on or in connection with its services which is likely to cause confusion, mistake or deception as to the affiliation, connection, or association of Defendants with BRI, and/or as to the origin, sponsorship or approval of Defendants' goods, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Defendants' conduct as described herein also constitutes an attempt to trade on the goodwill that BRI has developed in the Marks, all to the damage of BRI.

103.    Defendants' use in commerce of a designation which is confusingly similar to the Marks, despite its having actual and constructive notice of BRI's prior rights in and to the Marks, constitutes intentional conduct by Defendants to make false designations of origin and false descriptions about its services and commercial activities.

104.    Defendants have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage and injury to BRI.

*ACTIVE 51842226v4*

## COUNT IV

### Trademark Infringement and Unfair Competition Under Virginia Law
### (Va. Code §§ 59.1-92.12-59.1-92.13)

105.    BRI hereby realleges and incorporates by reference the allegations of paragraphs 1 through 104 of this Complaint as if fully set forth herein.

106.    Defendants' acts constitute unlawful infringement and unfair competition under Va. Code §§ 59.1-92.12-59.1-92.13 as such acts are likely to mislead and deceive customers and prospective customers into believing that Defendants' goods are that of BRI. As a result of Defendants' unlawful infringement and unfair competition, BRI has suffered and will continue to suffer irreparable injury and damage in an amount yet to be determined.

107.    Upon information and belief, Defendants' wrongful acts resulted in substantial unjust profits and unjust enrichment to Defendants in an amount to yet to be determined.

### PRAYER FOR RELIEF

WHEREFORE, BRI prays that it be granted the following relief:

A.    A preliminary and permanent injunction restraining and enjoining Defendants, its principals, officers, directors, agents, servants, and employees, as well as any successors and/or assigns of Defendants and all those acting in privity, concert or participation with Defendants, from:

(i)    imitating, copying, duplicating or otherwise making any use of the Marks or any marks confusingly similar to the Marks, including, without limitation, the images depicted on the Infringing Products;

(ii)    advertising, marketing, promoting, distributing, offering for sale, or selling any product or service in connection with any copy or colorable imitation of the Marks, including but not limited to the Infringing Products;

28

(iii)    using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to mistakenly believe that any product or service advertised, promoted, offered or sold by Defendants is sponsored, endorsed, connected with, approved or authorized by BRI;

(iv)    using any image or likeness of Bob Ross, or any colorable imitation thereof, for commercial purposes;

(v)    causing likelihood of confusion or injury to BRI's business reputation and to the distinctiveness of the Marks by unauthorized use of the same;

(vi)    engaging in any other activity constituting unfair competition or infringement of the Marks or BRI's rights in, or to use, or to exploit the same; or

(vii)    assisting, aiding or abetting another person or business entity in engaging in or performing any of the activities enumerated in subparagraphs (i) through (vi) above.

B.    A finding that the acts of Defendants constitute trademark infringement in violation of 15 U.S.C. § 1114(1);

C.    A finding that the acts of Defendants constitute false designation of origin in violation of 15 U.S.C. § 1125(a);

D.    A finding that the acts of Defendants constitute trademark infringement in violation of Va. Code §§ 59.1-92.12-59.1-92.13;

E.    A finding that the acts of Defendants constitute misappropriation of rights of publicity under Va. Code §§ 8.01-40 and 18.2-216.1;

29

F.      A finding that Defendants' violations of BRI's trademark rights, under 15 U.S.C. §§ 1114 and 1125(a) and (d), are willful as a result of the actions complained of herein, and that this is an exceptional case pursuant to 15 U.S.C. § 1117(a);

G.      An award to BRI of monetary damages in an amount to be fixed by the Court in its discretion as just, including all of Defendants' profits or gains of any kind resulting from the actions complained of herein, said amount to be trebled, and exemplary damages in view of the intentional nature of the acts complained of herein, pursuant to 15 U.S.C. § 1117(a) and (b), and the common law of the State of Virginia;

H.      An award to BRI of its attorneys' fees and its costs and expenses of litigation, pursuant to 15 U.S.C. § 1117(a) and (b);

I.      An order requiring Defendants and any principals, agents, servants, employees, successors and assigns of and all those in privity or concert with Defendants who receive actual notice of said order, to deliver up for destruction all infringing products and all promotional, advertising and any other printed materials and items of any kind bearing (i) the Marks; (ii) the likeness, name, and/or image of Bob Ross and/or (ii) any other mark or design that is confusingly similar to the Marks; and

J.      Such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## <u>JURY DEMAND</u>

BRI hereby demands a trial by jury as to all issues and claims so triable.

Dated:   August 24, 2020                    Respectfully submitted,


/s/ David G. Barger
David G. Barger (VSB # 21652)
GREENBERG TRAURIG, LLP
1750 Tysons Blvd., Suite 1000
McLean, VA 22102
Telephone: (703) 749-1307
Facsimile: (703) 714-8307
Email: bargerd@gtlaw.com

Steven J. Wadyka, Jr.
(*pro hac vice* application forthcoming)
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C.  20037
Telephone: (202) 331-3105
Facsimile: (202) 331-3101
Email: wadykas@gtlaw.com

*Counsel for Plaintiff*
*Bob Ross, Inc.*